Malone, C.J.:
The State appeals the district court’s decision to dismiss the aggravated battery charge against Dustin Alex Evans *1044 based upon a finding that Evans qualified for self-defense immunity under K.S.A. 2014 Supp. 21-5231. The State charged Evans with aggravated battery arising from an altercation with Jose Luis Pena, Jr., that took place in Evans’ garage. During the altercation, Evans stabbed Pena, who was unarmed, with a sword. The district court held a pretrial hearing and, after weighing the conflicting evidence, found that the State had failed to establish probable cause that Evans’ use of force in defending himself was unlawful. Thus, the district court found drat Evans was immune from prosecution and dismissed the complaint. The only issue on appeal is whether the district court erred in applying K.S.A. 2014 Supp. 21-5231, which grants a suspect immunity from prosecution based upon the lawful use of self-defense.
We will review the facts in detail. On the evening of June 18, 2013, Evans and Pena each went to different bars in Overland Park. The evidence indicates that both men became intoxicated over the course of the evening. At approximately 3 a.m. on June 19, after the bars closed, Pena stopped at Evans’ house, about four houses from his own, to talk to Jason Dalton, who had given Evans a ride home from the bar. When Dalton left, Pena knocked on Evans’ front door. Evans came to the door and allowed Pena to enter the house. Evans’ friend, Jarod King, also was at the house, and the three men eventually moved out into the garage. Pena’s wife joined the men for awhile, but she and King eventually left, leaving only Pena and Evans in the garage.
Evans suggested a wrestling match and pulled some wrestling mats from the garage and spread them in the driveway. The two men apparently agreed to a “grappling” match in which the winner would be the person who obtained a “tap out” by the other.
Evans and Pena provided different accounts of what happened next. Evans later told police that Pena covered Evans’ mouth with his hand during the wrestling match. Evans attempted to move Pena’s hand and became frantic when Pena kept replacing his hand over Evans’ mouth. Evans was unable to breathe. He managed to break free, stood up, and moved into the garage. Evans accused Pena of trying to kill him. Pena followed Evans into the garage, threatening to kill Evans and his family. Evans repeatedly told Pena *1045 to step back, but Pena continued to advance toward Evans. Evans retrieved a katana-style sword he had stored in the garage and pointed it at Pena. When Pena continued to advance towards Evans, he stabbed Pena once in the chest with the sword.
Pena later testified that he accidentally placed his hand against Evans’ throat during the wrestling match as he attempted to gain a better position. Evans jumped up, visibly angry, and walked into the garage. Pena got up and walked along the outside of the garage, asking Evans what was wrong and whether he was okay. Evans accused Pena of trying to kill him. As they talked, Pena became distracted by something and looked over his shoulder. Pena stated that as he was turning back to Evans, he realized that Evans was trying to stab him with a sword. Pena raised his arm in defense and prevented the first two blows, but he was stabbed in the chest on tire third attempt. Pena noticed blood gushing out of his chest and pleaded with Evans to call someone to help. Evans responded, “Fuck you, mother fucker, die. That’s what you get.” Pena retreated out of the garage and staggered down the driveway into the neighbor’s yard, leaving a blood trail as he moved. He pounded on tire neighbor’s door several times before losing consciousness.
Evans eventually called 911 and reported that he had stabbed Pena. Originally, Evans only reported that he stabbed a man who had come onto his property. When the dispatcher asked for an explanation of the events that preceded the stabbing, Evans explained that he had been wrestling and knew the victim. Emergency personnel responded to the call and Pena was rushed to the hospital. At the hospital, Pena wavered in and out of consciousness. When asked why Evans stabbed him, Pena indicated that he did not know the reason. Pena stated, “One minute we were fine, the next we weren’t.”
Pena received emergency surgery. The treating physician informed an officer that Pena had received a puncture into his chest measuring approximately 3 inches wide and about a foot deep, cutting through a rib bone. The wound cut Pena’s liver and pancreas and nicked tire pericardium, the.sac surrounding the heart. Though the doctors indicated that the injuries were life threaten *1046 ing, Pena survived. A sample of Pena’s blood was taken at the hospital, and later testing indicated a blood-alcohol content of .20.
The police arrested Evans on the night of tire incident. On June 20, 2013, the State charged Evans with aggravated battery under K.S.A. 2014 Supp. 21-5413(b)(l)(A) (intentionally causing great bodily harm). At the preliminary hearing on September 11, 2013, during which only Pena testified, the district court found probable cause to believe Evans committed aggravated battery and bound him over for trial.
On January 16, 2014, about 1 week before Evans’ scheduled jury trial, Evans filed a “Motion to Present the Jury a Complete Defense.” Evans also filed a “Motion to Enforce K.S.A. 21-5231.” Evans’ motions did not seek dismissal of tire aggravated batteiy charge. Instead, Evans asked the district court to conduct an analysis in conjunction with the jury trial in order to determine whether Evans was entitled to self-defense immunity. The State filed a memorandum in response to Evans’ motions.
The district court held a hearing on the motions on April 7,2014. The State presented the preliminary hearing transcript as evidence, and tire parties stipulated to numerous exhibits, including police reports of the investigation surrounding the stabbing incident, crime scene reports, medical reports, photographs, and recordings of the 911 call and Evans’ interviews with the police. In addition, Evans called as witnesses five law enforcement officers who had participated in the investigation.
The stipulated evidence presented at the hearing revealed some inconsistencies in Pena’s version of the events. In his preliminary hearing testimony, Pena testified that after the wrestling match abruptly ended, he never followed Evans back into the garage. But the undisputed blood evidence indicated that the stabbing took place in the back area of the garage next to the door going into the house. Also, Pena testified at the preliminary hearing that Evans brandished the sword three times and Pena deflected the first two blows causing injury and scarring to his forearm. But the medical evidence indicated there were no injuries on Pena’s arms. Finally, the stipulated evidence included a report from an emergency room doctor and director of a wound care center who opined that the *1047 stabbing took place when Evans was in a defensive posture with both hands on the sword. After receiving the evidence, the district court took the matter under advisement.
On April 25,2014, the district court filed a comprehensive order dismissing the State’s case against Evans. Relying primarily upon Lemons v. Commonwealth, 2012 WL 2360131 (Ky. App. 2012) (unpublished opinion), revel 437 S.W.3d 708 (Ky. 2014), the district court found that it was permitted to weigh the credibility of the evidence presented on the issue of self-defense immunity. After weighing the evidence, the district court found that the State had failed to establish probable cause that Evans’ use of force was unlawful. The district court found that Evans “was reasonably justified under these facts in using force because Pena was clearly a threat and a reasonable person in his position would have felt it necessary to defend himself and/or his home.” Accordingly, the district court granted self-defense immunity to Evans and dismissed the charge of aggravated batteiy. The State filed a motion to reconsider, which tire district court denied. The State then filed a timely notice of appeal.
On appeal, the State contends that the district court erred in applying K.S.A. 2014 Supp. 21-5231, which grants suspects immunity from prosecution based upon self-defense. The State argues that tire district court improperly weighed the conflicting evidence instead of viewing tire evidence in a light most favorable to the State. The State contends that the evidence did not support a finding that Evans’ use of deadly force was objectively reasonable, and, thus, the court erred in granting Evans immunity.
Evans responds that the State cannot establish that the district court applied the wrong standard to determine whether he was immune from prosecution pursuant to K.S.A. 2014 Supp. 21-5231. Evans contends that the district court should not be required to view the evidence in the light most favorable to the State at a hearing on a motion for self-defense immunity. In the alternative, Evans argues that even under a standard requiring the court to view the evidence in the light most favorable to the State, the evidence supported the district court’s decision to grant him immunity.
*1048 Resolution of this issue involves the interpretation and application of K.S.A. 2014 Supp. 21-5231 and related self-defense statutes. Interpretation of a statute is a question of law over which appellate courts have unlimited review. State v. Eddy, 299 Kan. 29, 32, 321 P.3d 12 (2014). Likewise, when the State appeals the dismissal of a complaint, an appellate court’s review of an order discharging the defendant for lack of probable cause is de novo. State v. Fredrick, 292 Kan. 169, 171, 251 P.3d 48 (2011).
In 2010, the Kansas Legislature enacted a series of statutes addressing the use of force, including the use of deadly force, in the defense of a person or property, including a person’s dwelling. See K.S.A. 2014 Supp. 21-5220 et seq. The statutes are commonly known as this state’s “stand-your-ground law.” K.S.A. 2014 Supp. 21-5222 states:
“(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessaiy to defend such person or a third person against such other s imminent use of unlawful force.
“(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessaiy to prevent imminent death or great bodily harm to such person or a third person.
“(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person.”
K.S.A. 2014 Supp. 21-5223 states:
“(a) A person is justified in the use of force against another when and to the extent that it appears to such person and such person reasonably believes that such use of force is necessaiy to prevent or terminate such other’s unlawful entiy into or attack upon such person’s dwelling, place of work or occupied vehicle.
“(b) A person is justified in the use of deadly force to prevent or terminate unlawful entiy into or attack upon any dwelling, place of work or occupied vehicle if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or another.
“(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person’s dwelling, place of work or occupied vehicle.”
K.S.A. 2014 Supp. 21-5230 states:
“A person who is not engaged in an unlawful activity and who is attacked in a place where such person has a right to be has no duty to retreat and has the right *1049 to stand such person’s ground and use any force which such person would be justified in using under article 32 of chapter 21 of tire Kansas Statutes Annotated, prior to their repeal, or K.S.A. 21-5202 through 21-5208, 21-5210 through 21-5212, and 21-5220 through 21-5231, and amendments thereto.”
Finally, K.S.A. 2014 Supp. 21-5231 provides immunity from prosecution for any person who lawfully uses force in defense of a person or property. That statute states:
“(a) A person who uses force which, subject to the provisions of K.S.A. 2014 Supp. 21-5226, and amendments thereto, is justified pursuant to K.S.A. 2014 Supp. 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer who was acting in the performance of such officer’s official duties and the officer identified the officer’s self in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, ‘criminal prosecution’ includes arrest, detention in custody and charging or prosecution of the defendant.
“(b) A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (a), but tire agency shall not arrest tire person for using force unless it determines that there is probable cause for the arrest.
“(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause.” K.S.A. 2014 Supp. 21-5231.
In State v. Ultreras, 296 Kan. 828, 845, 295 P.3d 1020 (2013), the Kansas Supreme Court determined that the standard of proof for whether a defendant is entitled to immunity from criminal prosecution is probable cause. Furthermore, the State bears the burden of establishing proof that the force used by the defendant was not justified as part of the probable cause determination under the immunity statute. 296 Kan. at 845.
Immunity is separate and distinct from the affirmative defense of self-defense. A prosecutor must rebut a claim of immunity before a case can go to trial. This procedure differs from when a defendant raises an affirmative defense which must be established at trial. Generally, in order for a defendant to be bound over for trial, it must only appear from the evidence that a felony has been committed and there is probable cause to believe the defendant committed it. See K.S.A. 2014 Supp. 22-2902(3). But as noted in Ultreras, “once a defendant raises justified use-of-force immunity *1050 before a court, a probable cause determination must also include a determination that the defendant’s use of force was not justified under [the statutes]. Hence, the statute as written with a probable cause standard adds an additional requirement and is meaningful.” 296 Kan. at 844.
While the Ultreras court declined to establish procedures for immunity hearings, this court addressed the procedural treatment of motions for self-defense immunity in State v. Hardy, 51 Kan. App. 2d 296, 300-04, 347 P.3d 222 (2015), rev. granted 304 Kan. (2016). In Hardy, this court held that in considering a motion for self-defense immunity under K.S.A. 2014 Supp. 21-5231, a district court must conduct an evidentiary hearing, unless the parties otherwise stipulate to the factual record, and the rules of evidence apply. Whenever possible, the district court should combine the immunity hearing with the defendant’s preliminary hearing. At the evidentiary hearing, the State has the burden to establish probable cause that the defendant acted without legal justification in using force. This court further held that consistent with making a probable cause determination at a preliminary hearing, the district court must view die evidence in a light favoring the State, meaning conflicts in the evidence must be resolved to the State’s benefit and against a finding of immunity. 51 Kan. App. 2d at 304.
Here, there can be no real dispute that the force used by Evans was deadly force, as that term is statutorily defined. See K.S.A. 2014 Supp. 21-5221(a)(2) (“ ‘Use of deadly force’ means die application of any physical force described in paragraph (1) which is likely to cause death or great bodily harm to a person.”). The sword wound entered Pena’s chest cavity approximately a foot, cutting a rib, his liver, his pancreas, and his pericardium. Even after stabilizing Pena in the emergency room for surgery, the doctors told law enforcement that his condition was precarious.
Therefore, for Evans’ use of force to be justified, the evidence must establish that he reasonably believed that the use of deadly force was necessaiy to prevent imminent death or great bodily harm to himself. See K.S.A. 2014 Supp. 21-5222(b). Evans had no duty to retreat from Pena. K.S.A. 2014 Supp. 21-5222(c). The rea *1051 sonableness of the need for deadly force is statutorily presumed if the person against whom the force is used has unlawfully or forcefully entered a dwelling. K.S.A. 2014 Supp. 21-5224(a)(l)(A). But here, Pena was an invited guest at Evans’ home and the two men initially had agreed to engage in a friendly wrestling match before tempers flared and the encounter became combative.
The evidence presented to the district court on Evans’ use of deadly force in self-defense was highly conflicting. As is clear from the district court’s order granting immunity, the district court gave little credibility to Pena’s sworn testimony provided at the preliminary hearing. In finding that the State failed to present sufficient evidence to establish probable cause that Evans’ use of force was unlawful, the district court stated:
“The State did not consider the whole picture in this case when it charged Defendant with aggravated batteiy a mere six hours after being taken into custody. More than one police officer involved in this case admitted to having only a cursory knowledge of immunity statutes in general, and virtually no knowledge of this state’s ‘stand-your-ground law.’ Although Defendant cited to this type of immunity several times during the course of his custody (referring to the ‘new castle law’), there was no indication by Overland Park police that Defendant’s assertions were taken seriously or, in fact, considered at all. Defendant remained cooperative throughout questioning (after making the emergency call for medical assistance for Pena) and was consistent in the relaying of events to various officers, while Pena has given various accounts of that night to police, the State, and this Court. Based on the record before the State at the time of arrest and charging, self-defense immunity should have been considered. The subsequent investigation revealed facts favorable to Defendant in his claim of self-defense, none of which were acknowledged or understood prior to the immunity hearing.”
The district court granted Evans’ motion for immunity, in part, because it found Evans’ version of the events to be more credible than Pena’s testimony. But it also appears that the district court granted the immunity motion, in large part, because the court found that the officers investigating the case were unaware of this state’s “stand-your-ground” law. The district court determined that the State rushed to judgment by charging Evans with a crime without fully investigating his claims of self-defense.
Whether the district court erred in granting immunity to Evans turns on whether the district court was required to view the con- *1052 flirting evidence in a light favoring the State. Evans argues that, if the district court is required to interpret the evidence in a light most favorable to the State and is not permitted to weigh credibility, the immunity granted by statute becomes meaningless as the State will always be able to present some evidence that the defendant failed to act justifiably, usually in the form of the victim’s statement. Evans also points out that in ruling on other pretrial motions such as a suppression motion, the district court is not obligated to view the evidence in a light most favorable to the State but must make findings of fact and even credibility determinations.
As this court noted in Hardy, a pretrial motion to suppress evidence typically deals with fact issues only indirectly bearing on guilt or innocence, and jurors will not be called upon to decide those same fact issues at trial. 51 Kan. App. 2d at 301. But if a district court is granted broad authority to weigh conflicting evidence and assess credibility in granting immunity, as Evans advocates, the court effectively supplants the jury in this traditional role. As stated by this court in Hardy.
“The issue of self-defense immunity is inextricably bound up in guilt or innocence, and consistent with the strong preference for jurors making fact determinations in criminal cases, the preliminary examination standard [of viewing the evidence in a light favoring the State] preserves that function. A district court would otherwise usurp that role in considering self-defense immunity.” 51 Kan. App. 2d at 300-01.
A defendant’s motion for self-defense immunity is a dispositive motion. If granted by the district court, the State’s charges are dismissed and tire defendant is immune from prosecution. As with any dispositive motion filed before the parties are allowed to present their complete evidence at trial, such as a motion for summary judgment in a civil case, the evidence must be weighed in the light most favorable to the nonmoving party. Thus, in ruling on Evans’ motion for self-defense immunity, the district court should have been required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling was sought.
In dismissing the aggravated battery charge against Evans, die district court found that it was permitted to weigh the credibility *1053 of the evidence presented on the issue of self-defense immunity. We agree with the district court, in part. Our Supreme Court has stated that when evaluating evidence presented at a preliminary hearing, die judge must consider the defendant’s defense and pass judgment on the credibility of both the State’s and the defendant’s witnesses. See State v. Bell, 259 Kan. 131, 133, 910 P.2d 205 (1996). But generally, “[i]f diere is a conflict in witness testimony that presents a question of fact for the jury, the preliminary hearing judge must accept the version of the testimony which is most favorable to the State.” 259 Kan. at 133. Only if doubts about an accuser’s testimony are so strong that tiiey “obviate the appearance that [the defendant] probably committed the felony with which he was charged,” will discharge of the defendant be appropriate. State v. Chapman, 252 Kan. 606, 616, 847 P.2d 1247 (1993).
Here, Pena testified that he was stabbed just outside the entrance of the garage, but the undisputed blood evidence indicated that he was stabbed in the back corner of the garage. Pena testified that he blocked the first two blows with his arms, but the medical evidence indicated there were no injuries on his arms. Although the stipulated evidence presented to the district court revealed some inconsistencies in Pena’s version of the events, these inconsistencies were not so strong that they “obviate[d] the appearance” of probable cause that Evans committed the felony for which he was charged, even when his evidence of justification is considered. See Chapman, 252 Kan. at 616.
This was not a situation where an intruder broke into Evans’ home. Evans and Pena were neighbors. Evans invited Pena into his home on the night in question. At Evans’ suggestion, the two men initially agreed to engage in a friendly wrestling match. Tempers flared and the encounter became combative, ending with Evans using a sword to stab Pena, who was unarmed. The evidence of what happened in the final moments before the stabbing was highly conflicting, and Evans and Pena were the only witnesses.
If the district court was not required to view the evidence in a light favoring the State, the judge could have found in favor of either Evans or the State and there was sufficient evidence that would have supported either finding. But if the judge had viewed *1054 the evidence in a light favoring the State, it was sufficient to find probable cause to rebut Evans’ claim of immunity and submit the case to a jury.
According to this court’s published opinion in Hardy, in considering a motion for self-defense immunity under K.S.A. 2014 Supp. 21-5231, the district court must view the evidence in a light favoring the State. 51 Kan. App. 2d at 304. Although this court’s decision in Hardy is not final, a majority of this panel adopts the reasoning in that case as applied to the facts herein. Because the district court failed to view the conflicting evidence in a light favoring the State, we conclude the district court erred in granting self-defense immunity to Evans and dismissing the charge of aggravated battery. We reverse the district court’s judgment and remand with directions to reinstate the complaint. We assume that a timely petition for review will prevent the remand order from being filed until the Kansas Supreme Court has a chance to review this case and Hardy.
Reversed and remanded with directions.
[[Image here]]