NOT DESIGNATED FOR PUBLICATION

No. 113,468

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

LOREN MALIK WISEMAN,
*Appellee*.


MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed February 16, 2018. Affirmed.

*William C. Votypka*, deputy county attorney, *Nicholas C. Vrana*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Janine Cox* and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellee.


Before LEBEN, P.J., PIERRON and MCANANY, JJ.


PER CURIAM: Loren Wiseman shot and killed a man who was threatening Wiseman and his girlfriend in a grocery-store parking lot. The State charged Wiseman with premeditated first-degree murder, but the district court found that Wiseman was immune from prosecution under Kansas' "stand your ground" law, found in K.S.A. 2015 Supp. 21-5231.

The case is before our court for a second time. When the State appealed, we initially held that a district court should view the evidence in a light most favorable to the

State when deciding motions for immunity and, as a result, the district court had wrongly determined that Wiseman was immune from prosecution. See *State v. Wiseman*, No. 113,468, 2016 WL 6024582 (Kan. App. 2016) (unpublished opinion), *rev. granted and decision vacated* November 2, 2017.

After our decision in Wiseman's case, the Kansas Supreme Court held in two other cases that a district court must consider the evidence without taking it in a light favorable to the State when ruling on a motion for immunity under K.S.A. 2015 Supp. 21-5231. See *State v. Hardy*, 305 Kan. 1001, 390 P.3d 30 (2017), and *State v. Evans*, 305 Kan. 1072, 389 P.3d 1278 (2017). After deciding the *Hardy* and *Evans* cases, the Kansas Supreme Court vacated our earlier decision in Wiseman's case (which was based on a different standard) and sent the case back to us for further consideration. On review of the evidence heard by the district court, its findings, and the standards set out in *Hardy* and *Evans*, we now conclude that the district court correctly held that Wiseman was immune from prosecution. We therefore affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2014, Loren Wiseman and his girlfriend—Alexandra Escarcega— drove to a Dillon's grocery store in Garden City, Kansas. Soon after pulling into a parking spot, Jeremy Pascascio approached the parked car, shouted threats, and knocked on Wiseman's window. Wiseman gave Pascascio two warnings that he would shoot Pascascio if Pascascio didn't leave them alone. Despite these warnings, Pascascio continued to threaten Wiseman and Escarcega. Wiseman then rolled down his window and fired three shots, killing Pascascio. The State charged Wiseman with premeditated first-degree murder.

2

Wiseman filed a motion claiming immunity from prosecution, arguing that he acted in self-defense when he shot Pascascio. Under K.S.A. 2015 Supp. 21-5223(b), a person may use deadly force to prevent an attack on an occupied vehicle if that person reasonably believes that deadly force is necessary to prevent death or great bodily harm. The Kansas "stand your ground" law, found in K.S.A. 2015 Supp. 21-5231, says that a person who lawfully uses force to defend a person or property "is immune from criminal prosecution." Invoking immunity from prosecution under K.S.A. 2015 Supp. 21-5231 involves both a subjective and an objective element: (1) The person must have sincerely believed that using deadly force was necessary to defend himself or herself; and (2) a reasonable person in the same circumstances would have perceived that deadly force was necessary. *State v. Jones*, 298 Kan. 324, 332, 311 P.3d 1125 (2013); *McCracken v. Kohl*, 286 Kan. 1114, Syl. ¶ 3, 191 P.3d 313 (2008).

The district court held a preliminary hearing to determine whether the State had probable cause to believe Wiseman committed first-degree murder and whether Wiseman was entitled to immunity. Wiseman and Escarcega both testified.

Wiseman testified that on the day of the shooting, he and Escarcega drove to a Dillon's grocery store in Garden City. As they drove past the store's entrance, two unknown men came out, one of whom gestured at Wiseman by using his fingers to simulate shooting a gun. Wiseman said he told Escarcega to park far away from the men. She did, but before she and Wiseman could get out of the car, one of the men—Pascascio—approached the car. The doors were locked and the windows were rolled up, but Pascascio pulled on the door handle, hit the passenger-side window, and repeatedly demanded that Wiseman get out of the car.

Wiseman told Pascascio, "No. I don't know who you are," and demanded that Pascascio leave them alone. Pascascio replied that "me and my boys already have your tag number, so you better not fucking leave, because we're going to fuck you up."

3

Wiseman said he yelled at Escarcega to drive away, but she was panicking. Wiseman said Pascascio then threatened to kill him and Escarcega. Wiseman believed Pascascio's threat, so Wiseman pulled a gun from the glove box to show Pascascio. Wiseman said he removed the gun from its holster, but kept the gun pointed toward the ground with the safety on.

Wiseman testified that he told Pascascio, "You need to leave us alone or I will shoot you." Pascascio allegedly responded, "Fuck you. You think I'm scared of you or your gun? You're going to have to kill me." Wiseman said he told Pascascio that he would give Pascascio five seconds to leave or he would shoot him. Wiseman counted down from five, but did not shoot Pascascio. According to Wiseman, Pascascio crouched down to look at Wiseman through the window and called Wiseman a "bitch" and a "pussy." Wiseman said he felt scared and threatened because Pascascio kept taunting and threatening to kill him.

Wiseman then told Pascascio that he would give Pascascio ten seconds to leave or he would shoot. Wiseman said Pascascio laughed, called Wiseman a "bitch," and told Wiseman to "[g]et the fuck out of the car." Wiseman testified that after he reached three in his countdown from ten, Pascascio said, "I've got something for you, Bitch," and reached for his waistband. Wiseman said he thought Pascascio was going to start shooting, so he rolled down the window, clicked the safety off, and fired two to three times without aiming. Wiseman said Escarcega immediately started the car and drove to the YMCA parking lot, where Escarcega called the police. Escarcega and Wiseman cooperated with the investigation and peacefully went into police custody.

Escarcega's testimony corroborated Wiseman's account. She said that she and Wiseman drove to Dillon's and saw a man signaling what she thought was a gang sign. Escarcega parked far away, but Pascascio walked over, tapped on the window and said,

4

"You're that nigger that fucked with my homie." She said Pascascio pulled on the door handle.

Escarcega said that Wiseman told her to leave the parking lot, but she couldn't find her keys and was frantically searching for them beneath her seat. Escarcega said that Pascascio told Wiseman, "I'm going to kill you, your bitch, and her family." She said that Wiseman pulled out a gun to warn Pascascio, but Pascascio thought it was funny. Escarcega said Wiseman threatened to shoot if Pascascio didn't leave, but Pascascio didn't listen and kept threatening them. Escarcega said she then heard the gun go off.

The State called several witnesses and admitted video recordings of the police interviews with Escarcega and Wiseman.

Detective Freddie Strawder testified that the police interviewed Wiseman on and off over a 12-hour period about the shooting. He said that detectives were unable to establish any connection between Wiseman and Pascascio.

Shaylee Meyers, an eyewitness, testified that she saw Pascascio arguing with Wiseman while she was walking to her car. She heard Pascascio repeatedly tell Wiseman, "Get out of the fucking car," and, "Put the gun down [and f]ight me like a man."

Michelle Robinson, who was parked near Escarcega's car during the incident, said that Pascascio approached Escarcega's car as if he "was coming up to say hi to someone." She said Pascascio knocked on the passenger window and asked Wiseman to roll down the window, but then ordered Wiseman to "[g]et out of the car." She heard Pascascio tell Wiseman that he had the car's tag number and knew "[his] bitch" and then heard Pascascio say, "Do it, do it, do it."

5

Based on the testimony, the district court ruled that Wiseman was immune from prosecution, dismissed the charge against him, and ordered Wiseman released from custody. The court based its ruling on several factual findings that it made about the incident, including:

"4. The Court finds insufficient evidence of premeditation . . . .

. . . .

"6. Loren Wiseman and [Escarcega] were lawfully driving into the parking lot of Dillon's East in Garden City, Kansas.

"7. Throughout the entire event, Loren Wiseman and [Escarcega,] were inside an 'occupied vehicle' and lawfully in the parking lot.

"8. That neither Loren Wiseman nor [Escarcega] had any duty to retreat from the situation they found themselves in . . . .

. . . .

"10. Mr. Pascascio apparently followed Mr. Wiseman and [Escarcega] to the far east end of the Dillon's parking lot which the Court calculates to be about 3/4 of a city block from where he is reported to have parked his car.

"11. Mr. Wiseman was in the front passenger seat and [Escarcega] was driving the car. The passenger window was all the way up and the doors were locked.

"12. Mr. Pascascio approached the Defendant's car and knocked on the window demanding that [the] window be lowered.

. . . .

"14. The scene at the Dillon's Parking Lot escalated in mere minutes into a scary and dangerous situation. . . . Witness [Shaylee Meyers] testified that she stopped several Dillon's patrons and urged them to take cover. The fear and danger level was escalating rapidly during the incident that took only about 5 minutes.

"15. Mr. Wiseman and [Escarcega] finally pulled out in her car just seconds after the gun shots were fired and went around the block to the YMCA where they called the Police to report the shooting. The two persons from the car were quickly taken into custody and have been unable to visit with each other from December 6 to the date of this hearing.

"16. [Escarcega] reported on December 6 that Mr. Pascascio attempted several times to force entry into the car grabbing the door handle and yanking on it.

6

Mr. Wiseman made a similar claim at a later date and testified at the hearing that [Pascascio] was trying to force entry.

"17. During the confusing 5 minute confrontation, one or more witness[es] testified to hearing Mr. Pascascio make the following threats or statements in English and more in Spanish that were either not understood or indistinguishable:

   a. 'Fuck you pussy' 'You're a bitch . . . you and your girl'

   b. Him and his la familia are going to get us and they and his homies already have his tag # and threat[en] they are going to follow them and you better watch your back

   c. Fuck you bitch if you think I'm scared of your gun you are going to have to kill me

   d. 'Do it, do it, do it' [Michelle Robinson]

   e. 'Put the gun down and get out of the car and fight me like a man. You're a pussy, get out of the car. Put the fucking gun down!' [Shaylee Meyer]

   f. 'You that nigga that fucked with my homie' . . . his homie right there and he has my tags . . . he's gon[n]a 'kill you, your bitch and her family' [Escarcega]

"18. The above statements were primarily drawn from written statements of the 6 eye witnesses of the event that testified in Court. None of them testified that the deceased was drawing [a]way from the confrontation that he initiated."

When the State first appealed this case to our court, the parties disputed which procedures the district court should have used in evaluating Wiseman's immunity claim. We relied on our decisions from *State v. Hardy*, 51 Kan. App. 2d 296, 299-300, 347 P.3d 222 (2015), *rev'd* 305 Kan. 1001, 390 P.3d 30 (2017); and *State v. Evans*, 51 Kan. App. 2d 1043, 1050, 360 P.3d 1086 (2015), *rev'd* 305 Kan. 1072, 389 P.3d 1278 (2017), to hold that the same procedures used in preliminary hearings should also be used in immunity hearings. *Wiseman*, 2016 WL 6024582, at *9.

Applying that standard, we decided that the evidence—when viewed in a light most favorable to the State—showed that Wiseman was not justified in using deadly force because a fact-finder could conclude that he didn't honestly and sincerely believe that deadly force was necessary and a reasonable person wouldn't either. 2016 WL 6024582, at *10. We explained that a reasonable person could conclude that someone in fear of *imminent* death or great harm wouldn't be as deliberate as to count down twice

7

before shooting or as concerned about property damage as to manually roll down the window rather than shooting through it. 2016 WL 6024582, at *10. We held that the State established probable cause to believe that Wiseman committed premeditated first-degree murder and reversed the district court's ruling. 2016 WL 6024582, at *11.

Wiseman sought review by the Kansas Supreme Court. After it issued rulings in *Hardy* and *Evans*, it vacated our earlier ruling and sent the case back to us for further consideration under the standards it had set out there.

ANALYSIS

Wiseman claims immunity from prosecution under K.S.A. 2015 Supp. 21-5231, Kansas' "stand your ground" law. In *Hardy*, the Kansas Supreme Court examined this statute and set out the standards to be applied under it:

> "Upon a motion for immunity pursuant to K.S.A. 2016 Supp. 21-5231, the district court must consider the totality of the circumstances, weigh the evidence before it without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified."
>
> "The court's determination of probable cause must be premised on stipulated facts or evidence, on evidence received at a hearing pursuant to the rules of evidence, or both." *Hardy*, 305 Kan. 1001, Syl. ¶¶ 1, 2.

These are the precise steps the district court took: It held an evidentiary hearing and then determined that the State failed to establish probable cause that Wiseman was not entitled to immunity.

Our Supreme Court also told us in *Hardy* that we should review the district court's conclusion using a two-part standard. We first review the district court's factual findings

8

to make sure that those findings are supported by substantial evidence. Here, both the State and Wiseman agree that the district court's findings of fact were supported by substantial evidence, so our second step is to look at the legal conclusion that the district court drew from those findings of fact. Whether the district court's conclusion was correct is a question of law. When we review questions of law, we aren't required to give any deference to the district court's conclusion. *Hardy*, 305 Kan. 1001, Syl. ¶ 5.

Under K.S.A. 2015 Supp. 21-5223(b), a person may use deadly force to prevent an attack on an occupied vehicle if that person reasonably believes that deadly force is necessary to prevent death or great bodily harm to any person. A person's belief that deadly force is necessary to prevent an attack is reasonable if: (1) the person sincerely believes that using deadly force is necessary to defend himself or herself (or another person); and (2) a reasonable person in the same circumstances would believe that deadly force is necessary. *Jones*, 298 Kan. at 332; *McCracken*, 286 Kan. 1114, Syl. ¶ 3.

When a defendant claims immunity under K.S.A. 2015 Supp. 21-5223(b), the State carries the burden of proving that the defendant *wasn't* justified in using deadly force. *Hardy*, 305 Kan. 1001, Syl. ¶ 1. In other words, to proceed with its charges, the State must present evidence establishing probable cause that the defendant didn't believe that deadly force was necessary to protect himself from death or great harm or that a reasonable person wouldn't believe that deadly force was necessary.

After the preliminary hearing, the court made several factual findings, including:

- Wiseman and Escarcega were lawfully in a parked vehicle in a Dillon's parking lot.
- Pascascio approached the parked car, knocked on Wiseman's window, and demanded that the window be lowered.
- The scene became scary and dangerous quickly.

9

- Pascascio attempted to force entry and made several threats, including "[Y]ou better watch your back," "You that nigga that fucked with my homie . . . his homie right there and he has my tags . . . he's gon[n]a kill you, your bitch and her family," and, "Fuck you bitch if you think I'm scared of your gun you are going to have to kill me."
- Wiseman shot and killed Pascascio.
- Wiseman didn't act with premeditation.

Based on these findings, the district court concluded that the State failed to establish that Wiseman's belief that he had to use deadly force to protect himself was unreasonable.

We have reviewed the district court's factual findings. Under the standards applied in *Hardy* and *Evans*, we agree with the district court's decision: The State failed to establish that Wiseman wasn't justified in his use of deadly force. No evidence suggests Wiseman lacked the belief that he needed to use deadly force or that a reasonable person would have found deadly force unnecessary on these facts. Thus, Wiseman was entitled to statutory immunity from prosecution under K.S.A. 2015 Supp. 21-5231(a) and the district court properly dismissed the State's criminal complaint.

We affirm the district court's judgment.