NOT DESIGNATED FOR PUBLICATION

No. 118,245

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON L. STEELE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Osage District Court; PHILLIP M. FROMME, judge. Opinion filed March 8, 2019. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Brandon L. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Jason Steele appeals his conviction for aggravated burglary, arguing he was immune from prosecution based on self-defense and there was insufficient evidence to prove him guilty. Because self-defense was not a defense to aggravated burglary under the facts here, we hold the trial court properly denied Steele's motion. Besides, such an error, given the guilty verdict, would be harmless. We further hold that there was sufficient circumstantial evidence that Steele entered the residence with the intent to commit aggravated battery when he showed up at the residence at 3 a.m. angry, armed with three weapons, and ready to "fuck some people up" to find his belongings. We affirm.

1

*The incident begins with an early morning confrontation.*

In November 2016, at around 3 a.m., Steele drove to the residence of Kevin Brown and Angela Bogue. Steele was the ex-fiancé of Bogue's daughter and knew both Brown and Bogue. He had been drinking wine and smoking marijuana earlier that night. He saw a Facebook post his ex-fiancé had written that made him angry. He went to Brown and Bogue's house looking for his "shit"—two Samsung TVs, a Play Station Four, and some tools—that he believed Bogue's daughter had taken. He was not invited over to the house and they were not expecting him. There was a visible "no trespassing" sign outside the residence.

When Steele approached the front door, he had a hammer in one hand, a breaker bar in the other hand, and a knife in his pocket. He was angry. He pounded on the door with his fist. When no one answered, he pounded on the door with the hammer. Brown, who had been sleeping on the couch, awoke and answered the door. To open the door, Brown had to remove a roofing shovel that was barricading the door. Brown had the shovel in his hand when he answered the door and then set it down. Brown did not recognize Steele at first; Steele did not look like himself. Steele yelled, "Where is my shit." Brown answered, "It's not here."  Their stories differed from this point forward.

Brown testified at trial that he told Steele he could come inside the house and look around if Steele put down his weapons first. When Steele refused to put down his weapons, Brown tried to close the door, but Steele pushed his way inside, shoving Brown out of the way. When inside, Steele swung his weapons around, demanded his stuff, and yelled for Bogue, who was still sleeping. Brown sat down on the couch. Steele then smashed Brown's right index finger with the hammer. Brown got the roofing shovel to defend himself and sat back down on the couch.

Brown testified that Bogue came out of the bedroom and sat in a reclining chair next to the couch. She and Steele spoke. Then Steele started swinging his weapons, hitting her with the hammer, breaker bar, and/or knife. Brown poked at Steele with the roofing shovel to get him off of Bogue. Steele did not stop swinging his weapon, and Brown hit Steele on top of the head and in the face with the roofing shovel. At some point during the fighting, Bogue went back into the bedroom. Brown threw down the shovel, put Steele in a headlock, and pushed the hammer and breaker bar away from Steele. But Brown forgot Steele had a knife. Steele stabbed him in the buttock and hand. Bogue called 911 and Steele left the house.

Bogue testified that Steele was angry and agitated. Steele hit her three times with either the hammer or breaker bar and the knife. At the time, she was sitting in a recliner between Brown and Steele. She crawled out, grabbed her son, and ran to the bedroom. She testified her injuries were "defensive wounds" and "superficial," but she sought medical treatment at the doctor's office the next day. She had injuries on her arm and leg.

Steele testified that he did not push his way into the house—Brown left the door open and Steele just walked into the living room. Steele understood the open door as an invitation to come in. Brown had the roofing shovel with him the whole time. When inside, Steele asked Bogue where his "shit" was. She told him that it was at the trailer park. Satisfied, Steele then turned to leave, but Brown hit him on the back of the head with the roofing shovel. Brown said he was going to murder Steele. Brown then hit Steele in the mouth with the shovel. Steele threw his hammer at Brown but missed. Then Steele stabbed Brown in the buttock and hand with a knife. Steele denied hitting Bogue. He said he took his tools to the house that night to show them that he "meant business." He thought they had a .22 rifle at the house. He admitted that he had previously gone to people's trailers ready to "fuck some people up" to find his belongings.

3

Brown and Steele both needed medical attention. Brown had stitches on his finger and hand and staples on his buttock. Steele had five staples on his head and seven stitches on his lip. His four front teeth were loosened.

When police caught up with Steele that night, he was verbally combative and hostile. He told a police officer to shoot him. At one point, Steele told his dog to attack the officer. Nonetheless, he maintained that he was the victim in the earlier incident.

*Steele is charged.*

The State charged Steele with aggravated burglary and two counts of aggravated battery. Steele filed a motion for self-defense immunity from prosecution under K.S.A. 2016 Supp. 21-5231, claiming that he used force only after Brown had struck him twice in the head. The trial court heard the motion during the preliminary hearing and denied the motion. In its ruling, the court repeatedly stated it must view the evidence in the light most favorable to the State. The case proceeded to a jury trial. The jury was instructed that to find Steele guilty of aggravated burglary, the following must be proved:

"1.     The defendant entered a dwelling.
"2.     The defendant did so without authority.
"3.     The defendant did so with the intent to commit an aggravated battery therein.
"4.     At the time there was [a] human being in the dwelling.
"5.     This act occurred on or about the 14th day of November, 2016, in Osage County, Kansas."

The jury was instructed that aggravated battery was knowingly causing bodily harm to a person with a deadly weapon.

The jury was also instructed on self-defense. The court proposed giving an additional instruction saying that a person who commits a forcible felony—such as

4

aggravated burglary—is not entitled to use force in self-defense. See PIK Crim. 4th 52.230 (2016 Supp.). Because of the State's concerns, the court did not give the instruction. On March 2, 2017, the jury found him guilty of aggravated burglary but not guilty of either count of aggravated battery. The court set a posttrial motions deadline for 14 days before sentencing.

About a week after the trial, our Supreme Court decided *State v. Hardy*, 305 Kan. 1001, 1011, 390 P.3d 30 (2017). The court held that when evaluating a claim of self-defense immunity under K.S.A. 2016 Supp. 21-5231, the trial court must exercise its gatekeeping function and consider all of the circumstances, weigh the evidence without deferring to the State, and determine whether the State has established probable cause that the defendant's use of force was not statutorily justified. 305 Kan. at 1011. Prior to this decision, panels of this court had held that the trial court should weigh the evidence in a light most favorable to the State, as the trial court initially did here. See, e.g., *State v. Evans*, 51 Kan. App. 2d 1043, 1052, 360 P.3d 1086 (2015).

Accordingly, Steele renewed his motion for self-defense immunity or, in the alternative, a new trial on count one, contending that the court used the wrong standard in denying the motion previously by giving deference to the State. The court denied that motion after finding that Steele came to the house around 3 a.m. with weapons in his hands and knocked loudly. The court considered "the totality of the circumstances," including Brown's testimony that he forced his way in the house and Steele's testimony that he was permitted inside. The court found he was not entitled to self-defense with regard to the charge for which he was convicted—entering the house with intent to commit aggravated battery. The court noted that it did give a self-defense instruction, which the jury obviously had rejected on that count.

On the same day Steele renewed his motion for self-defense immunity, he moved for a judgment of acquittal, contending that there was no evidence at trial that Steele

entered the residence with the intent to commit aggravated battery. The court denied the motion, finding that Steele entered the home with weapons, was angry, swung his weapons around at the residents, injured the residents, and indicated he had been to other places looking for his belongings intending to "fuck somebody up." The court noted that seemingly inconsistent verdicts are permitted as long as the evidence at trial supported the conviction. On April 17, 2017, the court sentenced Steele to 130 months in prison.

*We consider self-defense immunity.*

To us, Steele contends that in denying his renewed immunity motion, the trial court failed to apply the standard articulated in *Hardy*, consider all the circumstances, and determine whether the State had met its burden.

We address a preliminary matter first. Steele did not file his renewed motion for immunity or, in the alternative, motion for a new trial within 14 days after the verdict. But K.S.A. 2017 Supp. 22-3501(1) permits a motion for a new trial to be filed "within such further time as the court may fix" and here the court fixed the time as 14 days before sentencing, which was at the time scheduled for April 3, 2017. Steele filed his motion on March 20, 2017, which was 14 days prior to April 3. Thus, we will review his claim.

In our view, Steele's immunity argument fails for three reasons:
- Self-defense is not a defense to aggravated burglary;
- the trial court used the correct standard in denying Steele's renewed motion for immunity; and
- the jury's verdict finding him guilty beyond a reasonable doubt rendered any failure to use the correct immunity standard harmless.

When we review a district court's ruling on a motion to dismiss based upon immunity under K.S.A. 2017 Supp. 21-5231, we must apply a two-part standard of

6

review of the district court's probable cause determination. Accordingly, if the lower court's factual findings arise out of disputed evidence, the appellate court will determine if the findings are supported by substantial competent evidence. The appellate court will not reweigh the evidence. The ultimate legal conclusion of whether the facts arise to the level of probable cause is a legal conclusion reviewed de novo. *Hardy*, 305 Kan. at 1012.

As the trial court pointed out, Steele was not entitled to claim self-defense with regard to the charge for which he was convicted—entering the house with intent to commit aggravated battery. He was not convicted of either count of aggravated battery so whether immunity applied to those charges is moot. The court found that Steele came to the house around 3 a.m. with weapons in his hands and knocked loudly. The court properly used the *Hardy* standard as is evident by the court's reference to "the totality of the circumstances," including Brown's testimony that Steele forced his way into the house and Steele's testimony that Brown backed away from the door and Steele was permitted inside.

There was no evidence—from either side—that use of force against Steele was imminent when he entered the house or that entering the house was somehow necessary to defend himself. See K.S.A. 2017 Supp. 21-5222. His self-defense argument was that once inside, after a discussion with Bogue, he turned to leave the house and was hit in the head by a roofing shovel. But his crime of aggravated burglary was already complete once he had entered the house with the required intent. When one is charged with entering into a dwelling without authority, "aggravated burglary is complete once unauthorized entry occurs." *State v. Daws*, 303 Kan. 785, 793, 368 P.3d 1074 (2016). The specific intent to commit a felony must exist at the time of unauthorized entry. 303 Kan. at 793. Here, the only theory of aggravated burglary that the jury was instructed on was that Steele entered a dwelling without authority with the intent to commit an aggravated battery therein. Self-defense did not apply.

7

Even if the trial court used the incorrect standard, the immunity from criminal prosecution provided for in K.S.A. 2017 Supp. 21-5231 does not protect against a guilty verdict supported by sufficient evidence. The jury was instructed on self-defense but found Steele guilty beyond a reasonable doubt. Our Supreme Court has held that a trial court's use of an erroneous standard and burden of proof when ruling on an immunity motion may be harmless error when there is no reasonable probability the error affected the outcome of the trial. *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013). In *Ultreras*, the district court "erred in all aspects of the immunity ruling," but the error was harmless because the issue of self-defense was fully litigated at trial and the jury found the defendant guilty beyond a reasonable doubt and the verdict was supported by sufficient evidence. 296 Kan. at 845-46. Here, a jury found Steele guilty of aggravated burglary beyond a reasonable doubt even though it was instructed that it could consider the defense of self-defense to that charge.

*Intent is inferred from the violent circumstances.*

Finally, Steele contends there was insufficient evidence that he entered the residence with the intent to commit an aggravated battery. He notes that the jury found him not guilty of the aggravated battery charges.

Our standard of review is well-established:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

8

A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). A defendant's intent is usually proven with circumstantial evidence. *State v. Thach*, 305 Kan. 72, 82-84, 378 P.3d 522 (2016).

A defendant is not required to commit the ulterior crime to complete an aggravated burglary; the defendant must only have the intent to commit the crime. See K.S.A. 2017 Supp. 21-5807(b); *Daws*, 303 Kan. at 793; *State v. Rodriguez*, No. 113,491, 2017 WL 3447901, at *10 (Kan. App. 2017) (unpublished opinion).

This record reveals that there was sufficient circumstantial evidence that Steele intended to commit aggravated battery when he entered the house. There was evidence that he came to the house uninvited at 3 a.m. with three weapons and banged on the door with a hammer. He wanted them to know he "meant business." He was angry and forced his way into the house. He refused to put his weapons down before he entered. He admitted that he had gone to other homes ready to "fuck some people up" when he was looking for his belongings. The jury could have reasonably believed that Steele intended to commit aggravated battery when he entered the home, but was unsure who struck first once Steele was inside. We reject Steele's suggestion that there was insufficient evidence.

Affirmed.

9