(275 P.3d 51)

No. 98,931[1]

STATE OF KANSAS, *Appellant,* v. TRACEY RENEE WILSON, *Appellee.*

—

Opinion filed December 19, 2008.

*Jamie L. Karasek,* assistant district attorney, *Robert D. Hecht,* district attorney, and *Paul J. Morrison,* attorney general, for appellant.

*Linda R. Mitchell,* of Silver Lake, for appellee.

Before GREENE, P.J., HILL, J., and BRAZIL, S.J.

BRAZIL, J.: The State charged Tracey Wilson with aggravated assault with a deadly weapon and criminal damage to property. The district court dismissed the charges following a preliminary hearing. The State appeals. We reverse and remand.

Tracey and Willie Wilson were in the midst of going through a divorce. Willie was visiting a friend, Evrette Jones, at his residence

[1]REPORTER'S NOTE: Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish pursuant to Rule 7.04 (2011 Kan. Ct. R. Annot. 57). The published version was filed with the Clerk of the Appellate Courts on February 29, 2012.

on November 9, 2006, when Tracey arrived at that location. Tracey and Willie had been arguing about the divorce and the argument continued when she arrived. Tracey became angry and drove her vehicle into Willie's vehicle multiple times causing significant damage. Willie was not available at the preliminary hearing on March 13, 2007. After Jones testified, the hearing was continued to June 4, 2007, when Willie testified.

Jones testified that he and his family came outside when they heard a crash. Willie was in the driveway looking at his vehicle which was already damaged. Jones saw Tracey back out of his driveway and then pull back in at a high rate of speed. Jones testified Tracey drove directly toward them. Willie ran one way and Jones ran the other. Tracey veered toward Willie. Tracey drove into Willie's vehicle again. Tracey backed up and hit Willie's vehicle another time. She then backed up and drove away.

Jones provided the police a written statement on the night in question. In it, Jones stated that Tracey sped into his driveway and hit Willie's vehicle several times. It made no mention of Tracey trying to hit Jones or Willie. When Wilson's attorney questioned him about this, he stated that at the time, he was "shook up" and Willie was hollering at the policeman, that Tracey had tried to hit him, and Jones was trying to calm him down. At another point in the cross-examination, Jones stated: "She was aiming for Will. The way he got up and screamed, she was trying to hit him because he was running and had dirt all over him. He even told the police officer she was trying to hit him."

Willie also provided a written statement to police. In it, he stated Tracey threatened him that if he wasn't going to be with her that he would either be dead or in jail. It went on to say that Tracey almost hit him with her car when she hit his vehicle. It also stated: "I feel that my life is in DANGER!!!" It went on to say: "I do take her threats seriously now after this last event. If I have to I will leave the state to get as far away from her as possible."

Willie's preliminary hearing testimony differed from his written statement. Willie testified Tracey hit his vehicle three times but stated he was not in any danger. Willie stated he was stressed out and under duress at the time he wrote the statement for police.

Willie explained that when he wrote, "I feel that my life is in DANGER!!!" he meant that his life could be in danger in the future. Willie explained: "I just felt that was a danger that she was that angry at me to hit the vehicles that I felt that I was in danger. But not like she [was] going to hit me with the truck then."

Prior to the preliminary hearing, Willie wrote a second statement, which he provided to Tracey's attorney. In it, he wrote: " 'I don't want to see [Tracey] go to jail or get in trouble.' " He explained at the preliminary hearing: "I didn't think it was as serious . . . after everybody calmed down. I didn't think it was, to me, that serious 'cause she has never, you know—I knew she had never did nothing like that before. Had even been in trouble." Thereafter, the following exchange took place between the State's attorney and Willie during which Willie explained why he gave the second written statement to Tracey's attorney:

"A. . . . [A]t the time we were talking about possibly reconciling and stuff like that, so it was—and we just get on, put it behind us and move forward.
"Q. Okay. And this case, the criminal case, was kind of getting in the way of that; would that be a fair statement?
"A. I guess."

Willie also testified that he and Tracey were the only people outside when she was driving into his vehicle.

At the conclusion of the preliminary hearing, the judge dismissed the charges against Tracey and stated the State had failed to meet its burden to proceed. The State appeals.

*Criminal damage to property*

Tracey was charged with criminal damage to property which is "[c]riminal damage to property . . . by means other than by fire or explosive . . . [i]ntentionally injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use of any property in which another has an interest without the consent of such other person." K.S.A. 21-3720(a)(1).

There was no dispute in testimony at the preliminary hearing that Tracey intentionally damaged Willie's vehicle. The key question became whether the criminal damage to property statute covers damage one inflicts to property partly owned by oneself.

The vehicle that Tracey drove on the night in question and the vehicle damaged were acquired by Willie during Willie and Tracey's marriage. The vehicle Tracey drove on the night in question was a Dodge Ram truck. The vehicle she damaged was a Kia Sorento. During their marriage, Willie purchased the Kia for Tracey and the Dodge for himself. The Dodge was titled in both of their names, but the Kia was in Willie's name only. During the course of the divorce proceedings, the judge ordered that Willie use the Kia and Tracey use the Dodge because of the titling error.

After a lengthy discussion between counsel and the judge, the judge made the following ruling:

"I find that in these circumstances, the State has not met its burden to establish that a crime has been committed. At the very minimum, this very improvident act was committed in an act of anger and the damage was done without asking the person who had an interest in the property of whether it could be damaged or not. But the property also belonged to the defendant, she had a marital interest in it. . . .

"But given all of this, I do not believe that the State has met its burden establishing probable cause that the crime of criminal damage has been committed."

It is this specific ruling from which the State appeals. The State specifically argues the fact that Tracey had a marital interest in the damaged Kia did not prevent the State from prosecuting her for criminal damage to property under K.S.A. 21-3720(a)(1). This raises an issue of statutory interpretation. Interpretation of a statute is a question of law over which this court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

Here, the statute covers the intentional damage to *any* property *in which another has an interest* without that person's consent. K.S.A. 21-3720(a)(1). The statute is clear and unambiguous and it covers, by its plain language, Tracey's actions on the night in ques-

tion. Other states construing similarly worded statutes have ruled in this fashion.

In *Gooch v. The State*, 289 Ga. App. 74, 656 S.E.2d 214 (2007), the defendant was convicted of criminal damage to property. The defendant argued he could not be guilty when he damaged joint marital property. In construing the words " 'any property of *another person,*' " the court stated that property partially owned by another is sufficient to establish the offense. Furthermore, the court stated the State need only show that a person other than the defendant had a legal right to possess or occupy the property. 289 Ga. App. at 75.

In *State v. Coria*, 146 Wash. 2d 631, 48 P.3d 980 (2002), the defendant was convicted of malicious mischief for damaging community property owned by the defendant and his wife. On appeal, he argued he could not have damaged " 'property of another' " since he owned the property along with his wife. 146 Wash. 2d at 633. The court indicated that as a purely literal matter, property owned jointly by a defendant and the victim is property of another. 146 Wash. 2d at 636.

In *State v. Zeien*, 505 N.W.2d 498 (Iowa 1993), the defendant was convicted of criminal mischief for damaging the contents of his estranged wife's home. The criminal mischief statute applied to damage done by one who has no right to so act. 505 N.W.2d at 498. The court determined that the wording of the statute and the public policies of domestic violence and preventing damage to property suggested that the statute should apply to marital property as it does to any other property. 505 N.W.2d at 499.

The district court erred when it dismissed the charge of criminal damage to property against Tracey at the conclusion of the preliminary hearing, and we reverse the judgment and remand for further proceedings.

The appellee argues the criminal damage to property statute is unconstitutionally vague. This issue was not raised below, presumably because the appellee prevailed below in having the complaint dismissed. Generally, constitutional arguments asserted for the first time on appeal are not properly before the court for review. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). See also *In*

*re Estate of Zahradnik*, 6 Kan. App. 2d 84, 92, 626 P.2d 1211 (1981) (determining that two new issues raised in appellee's brief were not properly before court). This is the State's appeal and Wilson did not file a cross-appeal. The appellee will have an opportunity to raise this issue with the district court on remand.

## Aggravated assault with a deadly weapon

"In reviewing the trial court's dismissal of a complaint, this court must examine the evidence de novo, using the same standard to weigh the evidence as the trial court used, that is, whether the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *State v. Romo-Uriarie*, 33 Kan. App. 2d 22, 27, 97 P.3d 1051, *rev. denied* 278 Kan. 851 (2004).

See *State v. Horton*, 283 Kan. 44, 57, 151 P.3d 9 (2007).

In reviewing the evidence, the court draws inferences in favor of the State. Moreover, the evidence need only show probable cause, not guilt beyond a reasonable doubt. Our role is not to decide whether charges should have been filed or whether the possibility of conviction is likely or remote. *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000). If there is conflicting testimony at the preliminary hearing, the court must accept that version which is most favorable to the State. *State v. Bell*, 268 Kan. 764, 764-65, 1 P.3d 325 (2000).

Aggravated assault with a deadly weapon is intentionally placing another in reasonable apprehension of immediate bodily harm by using a deadly weapon, in this case, a vehicle. K.S.A. 21-3408; K.S.A. 21-3410. The judge in dismissing this count explained that the State failed to meet its burden to proceed because Willie testified he did not believe he was in danger on the night in question. Thus, the judge reasoned, an essential element of the crime charged (reasonable apprehension of immediate bodily harm) had not been demonstrated.

This conclusion would be correct if the only evidence of reasonable apprehension of immediate bodily harm had been Willie's testimony at the hearing. However, his written statement from the night in question was admitted as evidence as well. In it, he stated (1) that Tracey threatened his life verbally on the night in question;

(2) that Tracey almost hit him with her vehicle; (3) that his life was in danger; and (4) that he was willing to leave the State to get away from Tracey. Willie admitted during cross-examination that he did not want Tracey to get into trouble and that there had been some talk of Willie and Tracey reconciling.

In addition, Jones testified that Tracey drove her vehicle toward Willie and that Willie had to run to get out of the way. He also testified that Willie was still "shook up" when the police arrived, that he kept telling them that Tracey had tried to hit him, and that Jones was trying to calm him down.

As is indicated above, the standard of proof at a preliminary hearing is not beyond a reasonable doubt. The State had to show probable cause that Tracey committed the crime of aggravated assault with a deadly weapon. Conflicts in evidence must be resolved in favor of the State at the preliminary hearing. It's unfortunate that the preliminary hearing was bifurcated and that Willie's testimony occurred approximately 2½ months after Jones testified. That may explain why the trial court made no mention of Jones' testimony when it made its findings and rulings at the conclusion of Willie's testimony. Jones' testimony clearly conflicted with Willie's and there was no apparent reason for him to testify untruthfully. Willie, on the other hand, was still in the midst of a divorce in which there had been efforts to reconcile. As argued by the State, it is not unusual for victims in domestic violence cases to recant or minimize a spouse's conduct. The evidence presented by the State was sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of Tracey's guilt. The district court erred in dismissing the aggravated assault charge.

Reversed and remanded for further proceedings.