IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,982

STATE OF KANSAS,
*Appellant*,

v.

MARLON T. HARDY,
*Appellee.*

SYLLABUS BY THE COURT

1.

Upon a motion for immunity pursuant to K.S.A. 2016 Supp. 21-5231, the district court must consider the totality of the circumstances, weigh the evidence before it without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified.

2.

The court's determination of probable cause must be premised on stipulated facts or evidence, on evidence received at a hearing pursuant to the rules of evidence, or both.

3.

The timing of such a hearing—including whether it should occur before, after, or contemporaneous with the preliminary hearing—is left to the sound discretion of the district court. When exercising such discretion, district courts must remain sensitive to the fact that the matter being resolved is a question of immunity that ought to be settled as early in the process as possible to fully vindicate the statutory guarantee.

1

4.

When rendering probable cause determinations pursuant to K.S.A. 2016 Supp. 21-5231, district courts must consider the statutory presumptions set forth in K.S.A. 2016 Supp. 21-5224 when they are factually implicated.

5.

An appellate court will apply a bifurcated standard of review to a district court's determination of probable cause pursuant to K.S.A. 2016 Supp. 21-5231. When a district court's ruling entails factual findings arising out of disputed evidence, a reviewing court will not reweigh the evidence and will review those factual findings for supporting substantial competent evidence only. The ultimate legal conclusion drawn from those facts is reviewed de novo. When there are no disputed material facts, a pure question of law is presented over which an appellate court exercises unlimited review.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 296, 347 P.3d 222 (2015). Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed March 10, 2017. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellant.

*Richard Ney*, of Ney and Adams, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: On the night of March 16, 2013, Marlon Hardy rode as a passenger in Jaylyn Bradley's red Mustang convertible to pick up two young women, including Y.M., at a house party on Fairview Street in Wichita, Kansas. At the time, Javier Flores—a partygoer already at the house—was severely intoxicated. He had consumed

about 20 beers and 4 shots of liquor. When Bradley and Hardy attempted to leave with Y.M., a dispute of some kind arose. Flores, along with a group of five to nine partygoers, surrounded the open convertible, preventing it from moving. Flores yelled racial slurs at Bradley and Hardy, but they did not respond. Several bystanders tried to calm Flores down and hold him back from the convertible, to no avail. Violence ensued.

The parties do not dispute that Flores instigated the violence. Unprovoked, Flores approached the passenger side of the convertible, reached in, and struck Hardy two to three times in the face. Hardy picked up Bradley's gun from the console and shot Flores once. Hardy put the gun down and Bradley picked it up, shooting Flores again. Flores suffered gunshot wounds in the right arm and left leg.

Given these undisputed facts, the State charged Hardy with aggravated battery. Hardy eventually claimed self-defense, and the case turned on the factual intricacies of that defense—principally, was the shooting contemporaneous with the violence initiated by Flores or had Flores disengaged before being shot? Indeed, preliminary hearing testimony supported both possibilities. Y.M. testified she was in the convertible and saw Hardy fire the shot after Flores had "backed up a little bit." She explained someone was pulling Flores away from the car but Flores was still "trying to get" Hardy. About a second later, Hardy shot Flores. Y.M. also recalled that when Hardy fired the shot, the convertible's path was clear enough to drive away. Flores' story flip-flopped throughout his testimony. Multiple times Flores testified he heard the shots right *before* he stopped punching. Yet, he also testified he heard the gunshot *after* he stopped punching or walked away.

Following the preliminary hearing, the district court found sufficient probable cause to bind Hardy over for trial. The court recognized the issue of self-defense but concluded, "It would be inappropriate for me to say at this juncture as a matter of law that self-defense is appropriate." Subsequently, Hardy moved for a grant of immunity

3

pursuant to K.S.A. 2016 Supp. 21-5231(a)—Kansas' self-defense immunity statute—and asked for a probable cause hearing. Citing *State v. Ultreras*, 296 Kan. 828, 295 P.3d 1020 (2013), Hardy claimed he was immune from prosecution unless the State could establish probable cause that he was not justified in his use of force. He argued the evidence taken at the preliminary hearing showed Flores' attack was unprovoked and Hardy's use of force was justified to protect himself or another pursuant to K.S.A. 2016 Supp. 21-5222(a).

The district court conducted the requested hearing, first observing that pursuant to *Ultreras*, the State had the burden to show probable cause that force was not justified. The court recognized *Ultreras* "reach[ed] no holding regarding the procedures by which the immunity defense should be presented to or resolved by the District Court."

Hardy advocated for an evidentiary presentation in the presence of the defendant with a right to confrontation. Hardy acknowledged "it's still an open question" whether an evidentiary hearing is required pursuant to K.S.A. 2016 Supp. 21-5231 but argued the hearing "must be something more than the Court looking at an affidavit of probable cause, if you will, that can make that determination because, obviously, that can be structured in any way charging authorities wish to structure it."

The State conceded that *Ultreras* gave no explicit procedural guidance but pointed out that while reaching our decision in *Ultreras*, we looked to a decision by the Kentucky Supreme Court in *Rodgers v. Com.*, 285 S.W.3d 740 (Ky. 2009). There, interpreting a similar self-defense immunity statute, the Kentucky Supreme Court refused to require an evidentiary hearing because one had not been expressly required in the plain language of the immunity statute. 285 S.W.3d at 755. Following *Rodgers*, the State argued an evidentiary hearing was not required and the district court could review witness statements and police affidavits to make its finding. Finally, and most important, the State

argued the court must resolve conflicting evidence in the light most favorable to the State.

In turn, Hardy responded that K.S.A. 2016 Supp. 21-5231 provides more protection than the usual probable cause determination—a "true immunity"—otherwise the statute is "wasted verbiage." Hardy asked for an independent finding "based on what *Ultreras* talked about and *Rodgers* talks about . . . the totality of the circumstances is what the Court should look at. There's no talk about that all evidence should be interpreted in favor of the prosecution."

The district court acknowledged that "reasonable minds can certainly disagree"; however, "it is wholly inappropriate, in my opinion, for a judge at a preliminary hearing to make findings under . . . 21-5231, the current statute." The court further explained:

> "My ruling at the preliminary hearing was simply that there was probable cause that a crime was committed . . . and probable cause to believe the defendant committed it. That's the purpose of a preliminary hearing. I didn't go outside those parameters. It's inappropriate. I voiced no opinion on whether the defendant could use self-defense or whether it was justified.

> "And I do not believe that a finding of probable cause at a preliminary hearing means implicitly the statute has been complied with."

Turning to the procedure for a self-defense immunity hearing, the court continued:

> "So ultimately our Supreme Court says we like *Rodgers*. We like the Kentucky Supreme Court. . . . [T]he Court directed in *Rodgers* that once a defendant raises the issue of immunity—and that's what's been raised here by statute—the State has the burden to establish probable cause. And it may do so by directing the Court's attention to the evidence in the record, including witness statements, investigative letters prepared by law enforcement officers, photographs, and other documents of record.

"Based on that language, and that language alone in the context of this opinion, I do not believe that the State's required to present evidence, per se, as far as sworn witness testimony, whether to lay foundation for me to review photographs or whether [to] lay foundation for any other documents they want me to look at."

The lower court thus ruled the parties could present whatever evidence they wanted in any form. In response, the parties submitted the matter to the court on the existing record, which included the sworn testimony from the preliminary hearing along with certain designated documentary evidence, including police interviews with Hardy and Y.M. along with law enforcement affidavits.

Ultimately, the district court weighed the evidence and granted Hardy's motion, holding he was immune from prosecution pursuant to K.S.A. 2016 Supp. 21-5231. The court concluded Hardy used "deadly force" as defined in K.S.A. 2016 Supp. 21-5221(a)(2), but the presumption of reasonableness set forth in K.S.A. 2016 Supp. 21-5224(a)(1)(A) applied because Flores entered an occupied vehicle to strike Hardy. Therefore, the court found the State had failed to carry its burden of probable cause:

"Based on the defendant, as I find it, having been struck while a passenger in the car, which was a convertible with its top down, and being struck in the face by the victim two or three times, this type of action by the victim can cause great bodily harm, thus causing the defendant having to prevent imminent great bodily harm."

In so ruling, the district court recognized that "a conflict in the evidence exists, and it's inherent," but "[i]f this is just an exercise in determining whether there are conflicts in [the] evidence or the information provided to a district court judge . . . this statute is meaningless." The court expressly made the following findings of fact after considering the totality of the evidence: (1) Hardy could not escape; (2) Flores instigated the violence inside the vehicle; (3) Hardy told Flores to stop; and (4) at the time Hardy

6

shot Flores, Flores was "very close to the defendant regardless, and the time between the punches and the shot fired is mere seconds."

On appeal, the Court of Appeals reversed and remanded, holding: (1) "[A] district court must conduct an evidentiary hearing on a motion for self-defense immunity"; and (2) "[t]he district court must view the evidence in a light favoring the State." *State v. Hardy*, 51 Kan. App. 2d 296, 304, 347 P.3d 222 (2015). The Court of Appeals acknowledged that *Ultreras* declined to outline the procedures for presenting or resolving an immunity claim but explained, "This case requires us to fill that void." 51 Kan. App. 2d at 296. In so doing, the panel held:

> "[A] district court must conduct an evidentiary hearing on a motion for self-defense immunity, unless the parties otherwise stipulate to the factual record. The rules of evidence apply. At the hearing, the State has the burden to establish probable cause that the defendant acted without legal justification in using force. The district court must view the evidence in a light favoring the State, meaning conflicts in the evidence must be resolved to the State's benefit and against a finding of immunity. Whenever possible, a district court should combine the hearing on the motion with a defendant's preliminary examination." *Hardy*, 51 Kan. App. 2d at 304.

Applying these standards, the panel concluded the district court erroneously granted self-defense immunity to Hardy and reversed and remanded for further proceedings. 51 Kan. App. 2d at 296-97. Of particular concern to the panel was the fact that the district court recognized factual conflicts but "plainly resolved at least some of those conflicts in deciding the motion and did so favorably to Hardy." 51 Kan. App. 2d at 298. In rejecting this approach, the panel stated that "the *Ultreras* decision effectively adopts the requirements imposed at a preliminary examination or hearing" for determinations pursuant to K.S.A. 2014 Supp. 21-5231. 51 Kan. App. 2d at 299-300.

Therefore:

"Following that lead [in *Ultreras*], we see no reason the procedural structure of a preliminary examination shouldn't similarly be incorporated for handling self-defense immunity claims. Nothing in either the self-defense immunity statute or *Ultreras* shouts out to the contrary. As we suggest, the preliminary examination and a request for self-defense immunity typically ought to be decided in a single hearing with a single set of ground rules. The district court, therefore, should hold an evidentiary hearing on a claim for self-defense at which the rules of evidence apply. That is how preliminary examinations now operate. *State v. Cremer*, 234 Kan. 594, 599-600, 676 P.2d 59 (1984); see *In re H.N.*, 45 Kan. App. 2d 1059, 1069, 257 P.3d 821 (2011). So the State would be obligated to call witnesses and lay appropriate foundations for documentary evidence; it could not rely on inadmissible hearsay.

. . . .

"Again, consistent with preliminary examinations, the district court should not resolve conflicts in the evidence and, rather, ought to construe the record in a light favoring the State. The district court's evaluation of evidence at a preliminary examination has been stated this way:  'If there is conflicting testimony, the preliminary hearing judge must accept the version of the testimony which is most favorable to the State.' *State v. Bell*, 268 Kan. 764, 764-65, 1 P.3d 325 (2000); see *State v. Whittington*, 260 Kan. 873, 877, 926 P.2d 237 (1996); *State v. Wilson*, 47 Kan. App. 2d 1, 6, 275 P.3d 51 (2008). The issue of self-defense immunity is inextricably bound up in guilt or innocence, and consistent with the strong preference for jurors making fact determinations in criminal cases, the preliminary examination standard preserves that function. A district court would otherwise usurp that role in considering self-defense immunity. *Cf. State v. Brooks*, 297 Kan. 945, 951, 305 P.3d 634 (2013) (cautioning appellate judges against venturing credibility assessments as 'invad[ing] the province of the jury')." 51 Kan. App. 2d at 300-01.

We granted Hardy's petition for review in which he claims (1) the Court of Appeals erred by concluding that district courts must resolve evidentiary disputes in favor

of the State when ruling on a defendant's motion for immunity pursuant to K.S.A. 2016 Supp. 21-5231; and (2) the district court's determination that Hardy was entitled to statutory immunity was both supported by substantial competent evidence and correct as a matter of law. We agree with Hardy on both counts, reverse the Court of Appeals, and affirm the district court's grant of immunity and dismissal of the case against Hardy. In the course of setting forth our holding below, we will also address and discuss the ancillary procedural questions raised by the parties and lower courts.

ANALYSIS

The Court of Appeals grounded its decision in this case on the conclusion that *Ultreras* "effectively" adopted the "requirements" of a preliminary hearing for immunity determinations pursuant to K.S.A. 2014 Supp. 21-5231 (formerly cited as K.S.A. 21-3219). 51 Kan. App. 2d at 299-300. Consistent with the *Hardy* panel decision, other panels of the Court of Appeals have reached the same result. See *State v. Evans*, 51 Kan. App. 2d 1043, 1052, 360 P.3d 1086 (2015) ("A defendant's motion for self-defense immunity is a *dispositive* motion. . . . As with any dispositive motion filed before . . . trial . . . the evidence must be weighed in the light most favorable to the nonmoving party."), *rev'd* 305 Kan. ___, ___ P.3d ___ (No. 112,000, this day decided); *State v. Wiseman*, No. 113,468, 2016 WL 6024582, at *9 (Kan. App. 2016) (unpublished opinion) ("But the most central feature of the *Ultreras* ruling was that the State had to meet a probable-cause standard. We agree with *Hardy* and *Evans* that this strongly suggests that we apply the same standards applicable in preliminary hearings to immunity hearings under K.S.A. 2015 Supp. 21-5231."); *State v. Uk*, No. 113,900, 2016 WL 5867236, at *7 (Kan. App. 2016) (unpublished opinion) ("[W]e will consider the evidence in a light most favorable to the State.").

While reasoning from parallel proceedings—whether dispositive motions or preliminary hearings—where factual disputes are resolved against the moving party is

9

understandable, the Court of Appeals has read too much into our decision in *Ultreras*. That decision did not (in either intent or effect) adopt the procedural requirements of a preliminary hearing for immunity determinations pursuant to K.S.A. 2016 Supp. 21-5231—a fact we made explicit by warning that "we reach no holdings regarding the procedures by which the immunity defense should be presented to or resolved by the district court." *Ultreras*, 296 Kan. at 845. *Ultreras* settled only the limited questions of what evidentiary standard was required by K.S.A. 2016 Supp. 21-5231 (probable cause) and which party had the burden to satisfy the standard (the State). 296 Kan. at 845. Only now do we turn to the question as yet unaddressed by this court—what procedural rules govern a district court's resolution of a defendant's claim of immunity pursuant to K.S.A. 2016 Supp. 21-5231? In particular, how must a district court treat conflicting evidence?

As with any problem of statutory interpretation, we turn first to the plain language of the statute itself. Because we are called upon to interpret the language of K.S.A. 2016 Supp. 21-5231, we exercise unlimited review. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). The principles of statutory interpretation and construction in Kansas are well known and often stated:

> "A basic tenet of those rules is that the intent of the legislature governs if it can be ascertained. To divine legislative intent, a court begins by examining and interpreting the language the legislature used. Only if that language is ambiguous does a court rely on any revealing legislative history, background considerations that speak to legislative purpose, or canons of statutory construction. Generally, a court should not read language into a provision." *Ultreras*, 296 Kan. at 843.

The immunity statute at issue provides as follows:

> "(a) A person who uses force which, subject to the provisions of K.S.A. [2016 Supp.] 21-5226, and amendments thereto, is justified pursuant to K.S.A. [2016 Supp.] 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal

10

prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer who was acting in the performance of such officer's official duties and the officer identified the officer's self in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant.

"(b) A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (a), but the agency shall not arrest the person for using force unless it determines that there is probable cause for the arrest.

"(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause." K.S.A. 2016 Supp. 21-5231.

Though there is no explicit procedural direction in the language of the immunity statute, we are not adrift on the sea of interpretation without an anchor in the text. The substantive language of the law—within its plain meaning—carries with it certain procedural requirements without which the substantive guarantees would be meaningless. Specifically, the operative word of the statute—"immune"—has a well-defined and understood meaning in both the law and common usage. As now Chief Judge Karen Arnold-Burger observed in her dissent in *Evans*,

"[I]mmunity, as defined by Black's Law Dictionary 867 (10th ed. 2014), is '[a]ny exemption from a duty, liability, or service of process.' Recent legislation in Kansas and elsewhere . . . has included grants of immunity to defendants who are justified in using force. Without probable cause to believe that unlawful force was used, arrest and prosecution is prohibited. K.S.A. 2014 Supp. 21-5231(b). Self-defense and immunity are clearly distinct concepts. If immunity were the same as self-defense, there would have been no need to adopt a specific immunity statute because K.S.A. 2014 Supp. 21-5222 would have sufficed. Perhaps most importantly, because K.S.A. 2014 Supp. 21-5231 grants immunity from arrest and prosecution rather than a mere defense to liability, 'it is

11

effectively lost if a case is erroneously permitted to go to trial.' *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

        . . . .

        ". . . A prosecutor must rebut a claim of statutory immunity before the case can go to trial. This procedure differs from when a defendant raises an affirmative defense. As the court in *Hardy* noted, '[i]n at least some cases involving the use of force, the State could make an evidentiary showing of probable cause without addressing possible self-defense. A motion for self-defense immunity necessarily requires the State to deal directly with the issue. [Citation omitted.]' *Hardy*, 51 Kan. App. 2d at 306. In *Ultreras*, the Supreme Court noted that this two-step approach is what gives the statute meaning and makes it distinct from an affirmative defense. . . .

        "At least two other courts have recognized the distinction between an affirmative defense and immunity. '[I]mmunity represents a far greater right than any encompassed by an affirmative defense, which may be asserted during trial but cannot stop a trial altogether.' *Bunn v. State*, 284 Ga. 410, 413, 667 S.E.2d 605 (2008); see also *State v. Duncan*, 392 S.C. 404, 410, 709 S.E.2d 662 (2011) ('by using the words "immune from criminal prosecution," the legislature intended to create a true immunity, and not simply an affirmative defense')." *Evans*, 51 Kan. App. 2d at 1062-64 (Arnold-Burger, J., dissenting).

Underlying the Court of Appeals' decisions in *Hardy* and the cases that follow is an apparent discomfort with "taking" the case out of the hands of the jury. We need look no further than the plain and ordinary meaning of the word "immune," however, to conclude that taking the case from the jury is precisely what the legislature's use of the term immune signifies. A true immunity—and we are convinced by the language used by the legislature in K.S.A. 2016 Supp. 21-5231 that the statute does confer a true immunity—carries with it the necessity of a procedural gatekeeping function, typically exercised by a detached magistrate, who will prevent certain cases from ever getting to a trial and a jury.

12

A proper analogy is to the warrant process. It is not uncommon for courts to describe the right to be free from unreasonable searches and seizures as a constitutional immunity. See *Lanza v. New York*, 370 U.S. 139, 143, 82 S. Ct. 1218, 8 L. Ed. 2d 384 (1962); *State v. Boyle*, 207 Kan. 833, 837, 486 P.2d 849 (1971). Prior to performing a search, the government can obtain a ruling—a warrant—from a neutral and detached magistrate that the constitutional immunity does not attach to a specifically requested search. The warrant may issue only after the government has met its probable cause burden. When considering the government's application for a warrant, the magistrate is required to weigh and consider all of the evidence presented using a totality of the circumstances standard. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) ("[W]e reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations. . . . The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."); *State v. Fisher*, 283 Kan. 272, Syl. ¶ 12, 154 P.3d 455 (2007).

Likewise, law enforcement officers making probable cause determinations in the field must consider the totality of the circumstances. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012) ("To be lawful, a warrantless arrest must be supported by probable cause. . . . 'Probable cause is determined by evaluating the totality of the circumstances.'"). It is important to emphasize that neither law enforcement officers nor magistrates are permitted to simply resolve all contradictions or conflicts in the evidence in favor of finding probable cause. *Sloop*, 296 Kan. at 20 ("'Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest.'"); see United States *v. Leon*, 468 U.S. 897, 914, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) ("[T]he courts must

13

also insist that the magistrate purport to 'perform his "neutral and detached" function and not serve merely as a rubber stamp for the police.'").

We are convinced by the legislature's use of the key terms "probable cause" and "immune" that the legislature intended that the district court perform a warrant-like gatekeeping function in this context. Thus, upon a motion for immunity pursuant to K.S.A. 2016 Supp. 21-5231, the district court must consider the totality of the circumstances, weigh the evidence before it without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified. Such a process is demanded by and inherent in the meaning of the terms used by the legislature.

Because the process just described requires a district court to hear and resolve conflicts in the evidence, we further hold the court's determination of probable cause must be premised on stipulated facts or evidence, on evidence received at a hearing pursuant to the rules of evidence, or both. See K.S.A. 60-402; *State v. Page*, 303 Kan. 548, 556, 363 P.3d 391 (2015) ("K.S.A. 60-402 establishes a general requirement for application of Kansas evidentiary rules in all proceedings unless exempted elsewhere."). The timing of such a hearing—including whether it should occur before, after, or contemporaneous with the preliminary hearing—is left to the sound discretion of the district court. When exercising such discretion, district courts must remain sensitive to the fact that the matter being resolved is a question of immunity that ought to be settled as early in the process as possible to fully vindicate the statutory guarantee.

Having found that the district court took the correct procedural approach to resolving the question of immunity before it, we now review the decision itself. We have traditionally applied a bifurcated standard of review to a district court's determination of probable cause made pursuant to the totality of the circumstances test, and we continue to do so in this new context of immunity determinations. When the lower court ruling

14

entails factual findings arising out of disputed evidence, a reviewing court will not reweigh the evidence and will review those factual findings for "supporting substantial competent evidence" only. *State v. Sanchez-Loredo*, 294 Kan. 50, 54, 272 P.3d 34 (2012). The ultimate legal conclusion drawn from those facts is reviewed de novo. 294 Kan. at 54. When there are no disputed material facts, a pure question of law is presented over which an appellate court exercises unlimited review. 294 Kan. at 54.

Here, the district court's factual findings were supported by substantial competent evidence. Testimony at the preliminary hearing revealed that a group of people, including Flores, menacingly surrounded the convertible, which prevented Hardy from escaping. Then Flores instigated the violence when he reached into the convertible and struck Hardy multiple times in the face. Though there is conflicting testimony concerning exactly what Flores was doing when Hardy fired the shot—whether he was backing up a little or still punching Hardy—the evidence is sufficient to support a reasonable factfinder's conclusion that the violence was contemporaneous and the risk of great bodily harm to Hardy was imminent.

Moreover, the district court correctly concluded, as a matter of law, that the statutory presumption from K.S.A. 2016 Supp. 21-5224 of Hardy's "reasonable belief that deadly force [was] necessary to prevent imminent death or great bodily harm to [Hardy] or another person" was triggered under these facts. By its plain language, the statutory presumption of reasonableness is implicated if Flores had "unlawfully or forcefully entered, and [was] present within, the . . . occupied vehicle of the person using force." K.S.A. 2016 Supp. 21-5224(a)(1)(A). Since Flores himself testified multiple times that Hardy shot him *during* the attack, the district court could reasonably conclude that Hardy fired the shot *while* Flores' arm was still present—and Hardy was still under attack—in the vehicle.

15

As the Court of Appeals noted when criticizing this aspect of the district court's ruling: "[I]n deciding a motion for self-defense immunity, a district court should not consider the presumptions in K.S.A. 2014 Supp. 21-5224(a) if, on *some* version of the facts, they would be inapplicable. To do otherwise would construe disputed evidence against the State . . . ." *Hardy*, 51 Kan. App. 2d at 303-04. Because we have held herein that district courts must "construe disputed evidence" against one party or the other in order to fulfill its gatekeeping role and give effect to the full scope of the plain meaning of the term "immune" as used in K.S.A. 2016 Supp. 21-5231, we conclude that district courts must consider the statutory presumptions when they are factually implicated.

Because the district court's factual findings were supported by substantial competent evidence and because the district court correctly reached the ultimate legal conclusion that the facts as found were insufficient to establish that the State had met its burden to demonstrate probable cause that Hardy's use of force was not justified, Hardy was entitled to statutory immunity from prosecution as a matter of law.

The decision of the Court of Appeals is reversed, and the district court's grant of immunity and dismissal of the criminal complaint against Hardy is affirmed.

ROSEN, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 110,982 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.